# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 25-3023**

**September Term, 2025**

FILED ON: JULY 31, 2026

UNITED STATES OF AMERICA,
                APPELLEE

v.

EZRA GRIFFITH,
                APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:24-cr-00056-1)

Before: HENDERSON, WALKER and GARCIA, *Circuit Judges*

## JUDGMENT

We considered this appeal on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The panel has fully considered the issues and determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d).

It is hereby **ORDERED** that the judgment of the district court be **AFFIRMED.**

\*       \*       \*

The playground at the corner of Gales Street and 18th Street in Northeast D.C. closes at dusk. But several hours after dusk, police officers noticed Ezra Griffith and three other people in the playground at a picnic table. When the officers approached, Griffith made movements with his hands to the front of his waistband and ran behind some playground equipment. Unable to go far because of a tall fence that surrounds the playground, Griffith eventually walked toward one of the police officers.

Because of Griffith's suspicious behavior, the officer handcuffed and frisked him. The officer said, "You got nothing on you, man?" Appellee Br. at 6. Griffith replied, "I ain't got no weapons." JA 53.

Less than a minute later, other officers found a loaded gun ten feet over the fence, near where Griffith had run. The gun was clean and dry in a way that would be unusual if the gun had been there for long.

Griffith was arrested, indicted, and tried for unlawfully possessing a firearm. *See* 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year). At trial, eyewitnesses described Griffith's flight and arrest, and an expert witness said DNA on the gun's magazine was almost certainly Griffith's. The Government argued to the jury that Griffith's waistband movements suggested he was trying to conceal the gun, that his flight gave him an opportunity to dispose of it, and that he showed consciousness of guilt by fleeing and by claiming to have "no weapons" even though the officer hadn't said "gun" or "weapon" when he asked, "You got nothing on you, man?"

The jury voted to convict, and the court sentenced Griffith to three years and six months in prison, as well as three years of supervised release.

\* \* \*

On appeal, Griffith says his trial lawyer was ineffective in two ways: by not moving to suppress his "I ain't got no weapons" statement under *Miranda v. Arizona*, 384 U.S. 436 (1966), and by not meaningfully countering the Government's "flight equals guilt" theme or requesting a limiting instruction about that flight. He also argues that the statute banning felons from possessing guns is unconstitutional, both facially and as applied to him. *See* 18 U.S.C. § 922(g)(1).

We affirm Griffith's conviction and deny his request to remand the case for an evidentiary hearing on his ineffective assistance of counsel claim.

"To raise a colorable claim for ineffective assistance of counsel, a defendant must allege sufficient facts to show two things: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." *In re Sealed Case*, 901 F.3d 397, 404 (D.C. Cir. 2018) (cleaned up). To demonstrate prejudice, a defendant must do more than merely "show that the errors had some conceivable effect on the outcome of the proceeding." *United States v. Pole*, 153 F.4th 64, 68 (D.C. Cir. 2025) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). He "must demonstrate a 'reasonable probability that,' if not for the errors, 'the result of the proceeding would have been different.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). For ineffective-assistance claims first raised on appeal, like this one, our "general practice is to remand for an evidentiary hearing unless the trial record alone conclusively shows that the defendant is or is not entitled to relief." *United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003) (cleaned up).

The record conclusively establishes there is no "reasonable probability" that Griffith's counsel's alleged deficiencies altered the outcome. Even if the court had excluded Griffith's "I ain't got no weapons" statement, and even if counsel had more fully developed innocent explanations for Griffith's flight, the jury would still have heard the evidence that he fled, which

2

the Supreme Court recently reaffirmed is "'certainly suggestive' of wrongdoing" even if innocent explanations exist, *see District of Columbia v. R.W.*, 146 S. Ct. 1069, 1072 (2026) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

That evidence would not have stood in isolation either. The jury would also have heard evidence of Griffith's waistband movements, evidence that a gun was found near where he had fled, evidence that the gun had not been there long, and evidence that the gun's magazine almost certainly had Griffith's DNA on it. In light of that evidence, the Government's case depended neither on Griffith's "I ain't got no weapons" statement nor on an unrebutted argument that flight equals guilt.

\* \* \*

Griffith also argues that 18 U.S.C. § 922(g)(1) is unconstitutional, facially and as applied to him. *See* U.S. Const. amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."). But that argument is foreclosed by this court's decision in *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019). It held "that those convicted of felonies are not among those entitled to possess arms." *Id.* at 160; *see also United States v. Carson*, 455 F.3d 336, 384 n.43 (D.C. Cir. 2006) (per curiam) ("we are . . . bound to follow circuit precedent absent contrary authority from an en banc court or the Supreme Court").

*Medina* was decided before *New York State Rifle & Pistol Ass'n v. Bruen*, which held that courts should not apply a "step two" interest-balancing test after deciding at "step one" that a law regulates the keeping and bearing of arms by a member of "the people" covered by the Second Amendment — as "keep," "bear," "Arms," and "the people" were understood at the time of ratification, as informed by the nation's history and tradition. 597 U.S. 1, 19–24 (2022). So if *Medina* had relied on the interest balancing that *Bruen* rejected, *Medina* would not control here. *See Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023) ("We may depart from the law of the case and from circuit precedent . . . based on an intervening Supreme Court decision.").

But *Medina* did not rely on interest balancing. Instead, Medina "look[ed] to tradition and history," including "the public understanding of the right at th[e] time" of ratification "to determine if a convicted felon would fall outside the scope of [the Second Amendment's] protection." *Medina*, 913 F.3d at 158. It concluded, *without* reaching a "step two" interest-balancing inquiry, that "the historical evidence and the Supreme Court's discussion of felon disarmament laws leads us to reject the argument that non-dangerous felons have a right to bear arms." *Id.* at 159.

*Medina* did leave open the possibility that "it may be possible for a felon to show that his crime was so minor or regulatory that he did not forfeit his right to bear arms by committing it." *Id.* at 160. But Medina's "felony fraud" conviction was not sufficiently minor or regulatory. *Id.* And if it wasn't, then neither is Griffith's conviction for attempted robbery.

\* \* \*

For these reasons, we deny Griffith's request to remand and affirm the judgment of the

3

district court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for hearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

### Per Curiam

**FOR THE COURT:**
Clifton B. Cislak

BY:    /s/
Daniel J. Reidy
Deputy Clerk
